OPINION OF THE COURT
John P. DiBlasi, J.
The practice of opposing motions with a “knee-jerk” response including a cross motion for the imposition of sanctions against the moving party or counsel without any basis in law or fact has become an increasingly disturbing aspect of civil litigation. *277 It has been recognized that a motion for sanctions in such circumstances is itself a form of frivolous conduct warranting the imposition of sanctions (see, Patterson v Balaquiot, 188 AD2d 275 [1st Dept 1992]; see also, Southern Blvd. Sound v Felix Storch, Inc., 167 Misc 2d 731, 732 [App Term, 1st Dept 1996]).
In this case, in response to a motion to dismiss the amended complaint, plaintiffs cross-moved for a default judgment and the imposition of sanctions against defendants. Upon consideration of the papers submitted on those cross motions, this court issued a decision and order entered February 17, 1999 (the February 17th decision) which denied both motions in all requests. Additionally, the February 17th decision directed plaintiffs’ counsel, Gregory Menillo, Esq. (Menillo), to show cause why sanctions should not be imposed against him for engaging in frivolous motion practice.
This court has received papers from both Menillo and defendants’ counsel in response to its order to show cause. After carefully considering the papers submitted and the controlling legal authorities, the court concludes that Menillo has engaged in frivolous motion practice and that he should be sanctioned in the amount of $1,000.
PROCEDURAL HISTORY
In this action plaintiffs seek judicial dissolution of various family partnerships, money damages and equitable relief based upon their numerous claims concerning the manner in which the entities were operated. Upon receipt of the original complaint, defendants moved to dismiss several of plaintiffs’ causes of action. By cross motion, plaintiffs requested leave to amend their complaint. In a decision and order entered November 9, 1998, Justice Louis A. Barone of this court granted leave to amend the complaint and denied the dismissal motion. Justice Barone directed that the amended complaint be served within 20 days of receipt of his decision and order with notice of entry.
Plaintiffs served an amended complaint upon defendants’ counsel on November 25, 1998. In lieu of answering, on December 18, 1998, defendants filed a motion for partial dismissal of the amended complaint. As their “knee-jerk” response, plaintiffs cross-moved for a default judgment and an award of sanctions (the second cross motion).
On the first branch of the second cross motion, it was argued that defendants were in default for failing to answer the original complaint. Specifically, plaintiffs asserted that CPLR 3211 (f) required defendants to answer the original complaint within *278 10 days after service of Justice Barone’s decision and order. In view of the absence of any such answer, plaintiffs maintained that a default judgment should be entered.
The second branch of the second cross motion was a request that this court sanction defendants for moving to dismiss the amended complaint and for failing to answer either the original complaint or the amended complaint. As related to their contention that the filing of the dismissal motion before this court was frivolous conduct, plaintiffs relied upon the “single motion rule” of CPLR 3211 (e). In particular, they argued that CPLR 3211 (e) permits only one dismissal motion in an action, as a consequence of which defendants were barred from moving to dismiss the amended complaint after seeking dismissal of the original complaint. Concerning the second ground for sanctions, plaintiffs asserted that defendants’ failure to answer either the original or the amended complaint demonstrated that they were “unnecessarily and unreasonably seeking to delay the progress of the instant litigation” (Menillo affirmation in support of cross motion, at 7).
Based upon an analysis of the issues in preparation of the February 17th decision, the court concluded that both branches of the second cross motion were frivolous. Upon that determination, the court directed that Menillo show cause why he should not be sanctioned for engaging in frivolous motion practice.
FRIVOLOUS CONDUCT
Part 130 of the Rules of the Chief Administrator of the Courts (22 NYCRR) authorizes Supreme Court, as well as other courts, to impose costs and sanctions upon an attorney or party who has engaged in frivolous conduct. Insofar as is relevant hereto, 22 NYCRR 130-1.1 (c) provides that:
“conduct is frivolous if:
“(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; [or]
“(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another”.
In response to the order to show cause, Menillo essentially restates the position taken by him on the second cross motion. Thus, he continues to maintain that defendants were required to answer the original complaint because there was a “window” *279 of time between the end of the 10-day answering period under CPLR 3211 (f) and the end of the 20-day period established by Justice Barone for the service of the amended complaint. Similarly, he repeats the argument that defendants were not permitted to move for dismissal of the amended complaint because they had already sought such relief as to the original complaint. Alternatively, he contends that the issues involved on the second cross motion were subject to differing views and were not the subject of established law, so that no finding of frivolous conduct on his part is warranted. Finally, he claims that his conduct does not warrant sanctions in any event because he was acting in good faith in the representation of his clients. None of these arguments is persuasive.
As relates to the default judgment application, the court is convinced that such a request, founded upon defendants’ failure to answer the original complaint, is not merely lacking in merit, but is entirely frivolous. At the time the second cross motion was filed by Menillo, he was well aware that he had successfully moved in behalf of plaintiffs for leave to amend the original complaint. That relief had been granted by Justice Barone, who also set a specific time by which the amended complaint was required to be served. In furtherance of his clients’ position, Menillo prepared an amended complaint, which was served upon his adversary on November 25, 1998, within the 20-day period set by Justice Barone. Thus, it cannot be credibly disputed by Menillo that from the time the application to amend the complaint was made, it was plaintiffs’ intention to serve that amended pleading.
Although Menillo continues to argue against the proposition, it is settled law that an amended complaint supersedes the original complaint and becomes the only complaint in the action (Schoenborn v Kinderhill Corp., 98 AD2d 831, 832 [3d Dept 1983]). In view of that established principle, the court concludes that defendants’ obligation to serve an answer to the original complaint ceased when they were informed that plaintiffs had leave to serve an amended complaint. Indeed, no purpose would have been achieved by the service of that answer, since within days thereafter both the original complaint and the original answer would no longer be part of the case, and the action would have “proceed [ed] as though the original pleading[s] had never been served” (see, Hawley v Travelers Indem. Co., 90 AD2d 684 [4th Dept 1982]).
In obvious recognition of the lack of foundation for his position, Menillo asserts that an answer to the original complaint *280 was required because there was a short “window” of time between the end of the 10-day period for service of the answer to that complaint and the date by which the amended complaint was required to be served, and because plaintiffs could “stand” upon their original complaint notwithstanding the granting of leave to amend that pleading. Specifically, he states that: “While this may appear to be an academic point, in the instant case this window is of substantive significance. The plaintiffs were granted leave to amend. Leave to amend is exactly that: the right, at a parties to [sic] option, to serve án amended pleading. Leave to amend is not a directive from the court to do so. The plaintiffs had the right to decide that they did not wish to amend and instead choose to stand on their original pleading. In the instant case this was of particular significance.” (Menillo affirmation para 21.) This statement, if believed by Menillo, smacks of just the type of litigation “game playing” that the sanction rules were designed to eradicate (see, Matter of Kernisan v Taylor, 171 AD2d 869, 870 [purpose of sanction rules “is to prevent the waste of judicial resources and to deter vexatious litigation and dilatory or malicious litigation tactics”]).
It cannot be doubted that on the cross motion before Justice Barone, plaintiffs, through Menillo, represented to that court that they wished to serve and file an amended complaint to address certain defects in that pleading or to insert additional matters which they believed should be contained therein. Acting upon that representation, Justice Barone granted plaintiffs leave to serve an amended complaint. Given those circumstances, both Justice Barone and defendants were entitled to rely upon the fact that the original complaint was being abandoned by plaintiffs, in that they fully intended to serve an amended complaint, as they later did.
That they received only what the statute (CPLR 3025 [b]) describes as “leave” to serve an amended complaint did not create the opportunity for plaintiffs or Menillo, the latter of whom is an officer of the court, to engage in some type of trickery whereby they could trap defendants into defaulting in the action by not serving an amended complaint after receiving a court order permitting them to do so. To the contrary, if plaintiffs really intended to rely only upon their original pleading, they were obligated to inform defendants of that intention, so that defendants would be aware of their need to address the original complaint, and not await the service of an amended pleading. Significantly, despite the proffering of this specious *281 argument which reflects adversely on Menillo’s good faith in dealing with Justice Barone and defendants, Menillo makes no claim that plaintiffs had any intention other than to serve an amended complaint once they obtained leave to do so.
Moreover, even if there was any merit to Menillo’s “window” argument, it has no application to the facts involved at bar. What is both relevant and controlling is that at the time Menillo filed the second cross motion, the amended complaint had already been served. Upon the service of the amended complaint, the original complaint had no legal existence because “[a]n amended complaint having been served, it superseded the original complaint and became the only complaint in the case” (Schoenborn v Kinderhill Corp., supra, 98 AD2d 831, 832, supra; see, Kaplan v K. Ginsburg, Inc., 14 Misc 2d 356, 358 [Sup Ct, Kings County 1958], mod on other grounds 8 AD2d 726 [2d Dept 1959]). Consequently, when the second cross motion was filed, there was no longer any original complaint in this action as to which a default judgment could be granted.
Considering the facts involved in this matter and the long-established principle as to the effect of service of an amended pleading, knowledge of which may be charged to Menillo, it cannot be doubted that defendants did not default in this action, and that plaintiffs’ motion for a default judgment, argued in papers prepared by Menillo, was frivolous in that it was “completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law” and was “undertaken primarily to * * * harass” defendants for their attack upon the amended complaint (22 NYCRR 130-1.1 [c] [1], [2]). This finding alone supports the imposition of sanctions.
However, even if the frivolous application for a default judgment had not been made, a similar conclusion would apply as to the alternate relief requested on the second cross motion. As noted, on that branch of the motion plaintiffs sought the imposition of sanctions against defendants for moving against the amended complaint and for failing to answer either the original or amended complaint. It was plaintiffs’ position on their cross motion, which is repeated by Menillo, that the filing of defendants’ motion to dismiss the amended complaint is prohibited by the single motion rule.
CPLR 3211 (e) provides, in relevant part, that “[a]t any time before service of the responsive pleading is required, a party may move on one or more of the grounds set forth in subdivision (a), and no more than one such motion shall be permitted” *282 (emphasis supplied). In this case, after service of the original complaint, but prior to answering it, defendants moved for its dismissal. As is apparent from the language of Justice Bar-one’s decision and order on plaintiffs’ cross motion to the dismissal motion, plaintiffs were granted leave to amend their complaint based partly on the fact that no responsive pleading had yet been served.* Although Justice Barone did not so state, it is obvious to this court that defendants’ motion to dismiss the original complaint was denied due to the granting of leave to serve an amended complaint.
Notwithstanding Menillo’s contrary view, because the original complaint was superseded and was no longer part of the record of this action (Kaplan v K. Ginsburg, Inc., supra, 14 Misc 2d, at 358), as a matter of law defendants were entitled to move for dismissal of the amended complaint after they were served with that pleading (CPLR 3211 [e]; see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:15, at 77).
As recognized by the court in Kaplan (supra), where a defendant has unsuccessfully sought dismissal of a complaint which is superseded by an amended complaint, the defendant cannot pursue an appeal of the unsuccessful motion because the original complaint has no further legal existence. Under such circumstances, the defendant’s only recourse is a motion to dismiss the amended pleading (Kaplan v K. Ginsburg, Inc., supra, 14 Misc 2d, at 358). Thus, it is clear that the single motion rule is no bar to a second dismissal motion where the complaint has been amended (see, supra).
Menillo attempts to avoid the effect of this conclusion by arguing that Justice Barone’s decision granting leave to amend necessarily encompassed a determination that the amended complaint was legally sufficient to withstand a CPLR 3211 (a) (7) attack. This court does not agree. While a court should consider whether a proposed amended complaint is facially sufficient to support a grant of leave to amend (see, CPLR 3211 [e]), such a review does not equate to a determination that the amended pleading will survive a challenge under CPLR 3211 (a) (7) upon grounds which have not yet been offered by a defendant who has not been formally served with that pleading. This conclusion follows from the rule that an “amended com *283 plaint * * * must be considered de novo and [a] previous determination with respect to the plaintiffs status does not constitute the law of the case” (see, Mendez v Goroff, 25 Misc 2d 1013, 1014 [Sup Ct, Kings County 1960], affd 13 AD2d 705 [2d Dept 1961], appeal withdrawn 12 NY2d 842 [1962]; see also, Cherry v Koch, 129 Misc 2d 346, 349 [Sup Ct, Kings County 1985]).
Further, as this court explained in the February 17th decision, if Menillo’s position was correct, a defendant’s statutory right to seek dismissal could be negated through the simple expedient of serving an amended complaint. This court does not believe that it is the intent of CPLR 3211 (e) to create the potential for such tactical mischief (see, Kaplan v K. Ginsburg, Inc., 14 Misc 2d 356, supra; cf., Sage Realty Corp. v Proskauer Rose L. L. P., 251 AD2d 35 [1st Dept 1998] [where amended complaint is served following motion to dismiss original complaint, it is movant’s option as to which pleading the dismissal motion will be considered]). Consequently, this court concludes that there is no support in law or fact for Menillo’s contention that defendants engaged in frivolous conduct by filing their motion for partial dismissal of the amended complaint.
No different conclusion is warranted as to Menillo’s assertion that defendants’ failure to answer either the original or the amended complaint constituted frivolous conduct. It is undisputed that defendants timely moved for dismissal of the original complaint. Consequently, “until ten days after service of notice of entry” of Justice Barone’s decision and order denying that relief (CPLR 3211 [f]), defendants were not required to serve an answer to the original complaint. Moreover, as set forth above, since leave to amend the complaint was granted, and service of an amended complaint was to be effected within the 20-day period set by Justice Barone, defendants were no longer obligated to answer the original pleading, unless plaintiffs notified them that they did not intend to serve an amended pleading.
Upon receipt of the amended complaint on November 25, 1998, defendants had the statutory right to file one motion seeking its dismissal (CPLR 3211 [e]). They pursued that course in a timely fashion by filing their motion to dismiss the amended complaint on December 18, 1998. Additionally, their filing of that motion extended the time in which they were required to serve an answer to the amended complaint (see, ibid.). Thus, they neither violated any statutory requirements concerning the service of responsive pleadings nor engaged in *284 frivolous conduct by failing to answer either the original or the amended complaint.
To the contrary, it is Menillo whose action of seeking sanctions on this ground is itself frivolous behavior within the scope of 22 NYCRR 130-1.1 (c), since his arguments in support of sanctions against defendants lack support in law or fact. While he posits arguments in opposition to such a conclusion, the court rejects them as entirely specious. Moreover, a finding that the second cross motion was frivolous is warranted even if the court applies Menillo’s other central defense, i.e., that the law on this issue is either unclear or has not previously been determined by any court of appellate jurisdiction, so that he should not be penalized for offering a new legal argument.
This court recognizes that the complete absence, or even the paucity, of authority as to the application of a statute may be a basis for vacating a sanction order (see, Matter of Bozer v Higgins, 204 AD2d 979, 980-981 [4th Dept 1994]; see also, Schultz v Beulah Land Farm & Racing Stables, 181 AD2d 1020, 1021 [4th Dept 1992]). In such instances the imposition of sanctions is deemed inappropriate because it can have the adverse effect of “inhibiting good-faith arguments to modify existing law” (Nolan & Co. v Daly, 170 AD2d 320, 321 [1st Dept 1991]). However, despite the need to permit attorneys the opportunity to seek modification or expansion of legal rules by offering legal arguments previously untendered, the courts of this State need not stand by and idly watch as their limited resources are expended in reviewing papers and rendering decisions on motions which are not merely lacking in merit (see, Lewis v Stiles, 158 AD2d 589, 590 [2d Dept 1990] [motion which is merely meritless, but not frivolous, does not warrant sanctions]; see also, Nolan & Co. v Daly, supra [same]), but as involved at bar, are clearly frivolous.
If, as argued by Menillo, the law is unclear as it applies to the single motion rule and to the answering of an original complaint as to which leave to amend was granted, and the second cross motion was, at worst, lacking in merit, such a conclusion applies equally well to defendants’ position in filing a motion attacking the amended pleading. Since Menillo is chargeable with knowledge of the status of the law on this issue at the time he filed the second cross motion, he may be held to the knowledge that, at worst, defendants’ position was also merely without merit, and not frivolous, given what he claims to believe is the unsettled state of the law in these areas. Consequently, Menillo knew that when he put forth his argu *285 ments in support of sanctions against defendants, they too were within their rights as litigants in asserting the position that they had not defaulted and could challenge the sufficiency of the amended complaint (see, Nolan & Co. v Daly, supra). That being true, in seeking sanctions against defendants for conduct which was not frivolous, Menillo violated 22 NYCRR 130-1.1 (c).
SANCTIONS
Upon a finding of frivolous conduct, this court is authorized to impose sanctions in an amount of up to $10,000, either alone or together with costs to the other party. In determining the penalty to be imposed in this case, the court has considered the nature of the conduct, the attitude demonstrated by Menillo and the need to deter future behavior of this type by Menillo and the Bar in general.
The frivolous conduct at bar involves the filing of a cross motion seeking remedies which are totally without support in the facts or in the controlling law. Such conduct was designed to harass defendants by requiring them to incur substantial additional legal fees related to the legal research and drafting of papers in response to the second cross motion.
Moreover, a review of Menillo’s papers in response to the order to show cause demonstrates a lack of appreciation and respect for the value of this court’s time and resources. Thus, in his initial affirmation, Menillo argues that because defendants dedicated only three pages of their lengthy papers to a response to the second cross motion, his filing of that motion “can hardly be deemed to have been harassing or intended to injure the defendants” (Menillo affirmation para 32). In so stating, he clearly overlooks the financial burden to defendants, as set forth above. Moreover, he fails to address at all the impact upon the legal system which results from frivolous motion practice. In particular, he completely ignores the fact that this court and its staff were required to expend their already heavily burdened resources in reviewing the papers submitted on the issues by both sides to this action, researching the frivolous issues proffered by Menillo in behalf of his clients, and preparing a decision and order which addressed, inter alia, the frivolous cross motion. Those additional resources could have been put to better use in addressing the meritorious issues of other litigants.
As is evident from the section of his papers referred to above, Menillo harbors the cavalier attitude that an opponent may be *286 forced to needlessly incur legal expenses for the efforts of their counsel in response to a frivolous motion, and the courts may be compelled to have their limited resources taxed even further, as long as there is a limitation on the amount of that needless effort. This court could not disagree more with such a view. The question that is relevant under these circumstances is not how much waste of money and resources is tolerable, but why any amount at all should be accepted.
It is this court’s view that the use of frivolous motion practice as a means of harassment is intolerable under any circumstances. Therefore, in order to prevent the repetition of such behavior, on the part of Menillo, and in an effort to stem the tide of such conduct by other members of the Bar, the imposition of more than a mere “slap on the wrist” is justified.
CONCLUSION
Civil litigation is not a game to most of the attorneys who are involved in its practice. Nevertheless, there are members of the legal profession, like any other cross section of society, who believe that they may violate governing standards of behavior with impunity. The rules against frivolous conduct set forth in 22 NYCRR part 130 are intended to deal with those practitioners who may share that belief (see, Matter of Kernisan v Taylor, 171 AD2d 869, supra).
In this case, the frivolous cross motion filed by Menillo on behalf of plaintiffs was intended to, and did, harass defendants. At the same time, it wasted the time and resources of this court. In order to address that conduct, the court sanctions Menillo in the sum of $1,000.
Wherefore, it is hereby adjudged and ordered that Gregory Menillo, Esq., has engaged in frivolous conduct as defined by 22 NYCRR 130-1.1 (c) (1) and (2) by filing a frivolous cross motion seeking a default judgment and the imposition of sanctions against defendants; and it is further ordered that Gregory Menillo, Esq., is sanctioned, pursuant to 22 NYCRR 130-1.1, and that he shall pay the sum of $1,000 to the Lawyers’ Fund for Client Protection of the State of New York; and it is further ordered that Gregory Menillo, Esq., shall pay the aforementioned sanction by no later than April 9, 1999 and shall file proof of such payment with the court at its chambers by no later than April 16, 1999.

 It is set forth in that decision that “[s]ince Defendants have not interposed an answer as yet and would not be prejudiced by an amendment, the Court will permit Plaintiffs to file an amended verified complaint” (Menillo exhibit C, at 2).